[L.A. No. 31859. Jan. 28, 1985.]

ALBERT BRANDT, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
STANDARD INSURANCE COMPANY, Real Party in Interest.

## COUNSEL

Neil M. Levy, Gordon S. Churchill and Robert J. Kaplan for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, John H. Scharer, Michael G. Yoder and Eloise S. Hock for Real Party in Interest.

Adams, Duque & Hazaltine, James L. Nolan, Martha G. Bannerman, Rogers, Joseph, O'Donnell & Guinn, Joseph W. Rogers, Jr., and Leo F. Orenstein as Amici Curiae on behalf of Respondent and Real Party in Interest.

## OPINION

KAUS, J.—■ When an insurer tortiously withholds benefits, are attorney's fees, reasonably incurred to compel payment of the policy benefits, recoverable as an element of the damages resulting from such tortious conduct?[1] We hold that they are and accordingly issue a writ of mandate directing the trial court to reinstate the portion of the complaint seeking attorney's fees as damages.

According to the complaint real party in interest Standard Insurance Company (Standard) issued a group disability income insurance policy to Vicom Associates, petitioner's employer, under which petitioner was insured. Pe-

---

[1]We do not decide *when* it is reasonable to incur such attorney's fees. The posture of the present case requires us to assume that the fees are reasonably incurred.

titioner sustained a loss covered by the policy when he became totally disabled. He made a timely demand on Standard for benefits, which it unreasonably refused to pay. Petitioner therefore filed an action against Standard for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) for violation of the statutory prohibitions against unfair claims practices. (Ins. Code, § 790.03.)

In his causes of action for breach of the duty of good faith and fair dealing and for the statutory violations, petitioner listed attorney's fees incurred in connection with the contract cause of action as part of the resulting damage. Standard successfully moved to strike the portions of the complaint seeking attorney's fees. Petitioner then filed the present mandate proceeding.[2]

Although we are reluctant to exercise our discretion to review rulings at the pleading stage of a lawsuit, we do so here because of the compelling circumstances presented. (See *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) The issue is of widespread interest, and the Courts of Appeal are in conflict. Moreover, the trial court's ruling has effectively deprived petitioner of the opportunity to present a substantial portion of his cause of action. Under the circumstances, extraordinary relief is appropriate. (*Ibid.*; *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894 [157 Cal.Rptr. 693, 598 P.2d 854].)

As noted, the Courts of Appeal are in conflict on the question of the recoverability of attorney's fees. The seminal cases on each side are *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358 [118 Cal.Rptr. 581], which allowed recovery and *Austero* v. *Washington National Ins. Co.* (1982) 132 Cal.App.3d 408 [182 Cal.Rptr. 919] (hereafter *Austero*), which denied it. In *Mustachio,* attorney's fees incurred in connection with negotiations leading up to settlement of the insured's policy claim were held properly included as an element of damages in the insured's later tort action against the insurer for breach of its duty of good faith and fair dealing. In *Austero,* a divided court rejected the reasoning of *Mustachio* and reversed an award of attorney's fees, holding that in a bad faith tort action recovery of attorney's fees incurred to obtain benefits under the policy is precluded by Code of Civil Procedure section 1021.[3] Presiding Justice Morris dis-

---

[2]Although petitioner seeks reversal of the entire order, we confine our review to the question of the recoverability of attorney's fees under his second cause of action—for breach of the covenant of good faith and fair dealing. Since the parties do not argue attorney's fees as damages for the statutory violations, we do not reach the question of attorney's fees under the third cause of action.

[3]Section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to costs and disbursements, as hereinafter provided."

sented, arguing that the majority's reliance on section 1021 misinterpreted the nature of the case. We agree and adopt much of Presiding Justice Morris' dissent.

■ "It is well settled that if an insurer, in discharging its contractual responsibilities, 'fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.' (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032], original italics.) When such a breach occurs, the insurer is 'liable for any damages which are the proximate result of that breach.' (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 925 [148 Cal.Rptr. 389, 582 P.2d 980].)" (*Austero, supra,* 132 Cal.App.3d at pp. 419-420 [dis. opn. of Morris, P. J.].)

■ When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort. (*Mustachio* v. *Ohio Farmers Ins. Co., supra,* 44 Cal.App.3d at p. 363.) These fees must be distinguished from recovery of attorney's fees *qua* attorney's fees, such as those attributable to the bringing of the bad faith action itself. What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action.

"When a pedestrian is struck by a car, he goes to a physician for treatment of his injuries, and the motorist, if liable in tort, must pay the pedestrian's medical fees. Similarly, in the present case, an insurance company's refusal to pay benefits has required the insured to seek the services of an attorney to obtain those benefits, and the insurer, because its conduct was tortious, should pay the insured's legal fees." (*Austero, supra,* at p. 421.)

Code of Civil Procedure section 1021 does not preclude an award of attorney's fees under these circumstances. "Section 1021 leaves to the agreement of the parties 'the measure and mode of compensation of attorneys.' However, here, as in the third party tort situation, 'we are not dealing with "the measure and mode of compensation of attorneys" but with damages wrongfully caused by defendant's improper actions.' (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 621 [30 Cal.Rptr.

821, 381 P.2d 645].)"[4] (*Austero, supra,* at p. 420.) In such cases there is no recovery of attorney's fees *qua* attorney's fees.[5] This is also true in actions for false arrest and malicious prosecution, where damages may include attorney's fees incurred to obtain release from confinement or dismissal of the unjustified charges (*Nelson* v. *Kellogg* (1912) 162 Cal. 621 [123 P. 1115]) or to defend the prior suit (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 59 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]).

The fact that—here as well as in *Austero*—the fees claimed as damages are incurred in the very lawsuit in which their recovery is sought, does not in itself violate section 1021's general requirement that parties bear their own costs of legal representation, though it may make the identification of allowable fees more sophisticated. If the insured were to recover benefits under the policy in a separate action before suing on the tort, the distinction between fees incurred in the policy action, recoverable as damages, and those incurred in the tort action, nonrecoverable, would be unmistakable. As pointed out in *Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at page 621, "[i]n the usual case, the attorney's fees will have been incurred in connection with a prior action; but there is no reason why recovery of such fees should be denied simply because the two causes . . . are tried in the same court at the same time. [Citation.] [¶] There was no disadvantage to defendant in the fact that the causes, although separate, were concurrently tried."

The dual nature of the present action distinguishes this case from *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298 [54 Cal.Rptr. 116, 419 P.2d 180], *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310 [85 Cal.Rptr. 665], and *Carroll* v. *Hanover Insurance Co.* (1968) 266 Cal.App.2d 47 [71 Cal.Rptr. 868]. "*Lowell, Patterson,* and *Carroll* were not bad faith cases. The plaintiffs' entire actions there were

---

[4]*Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1 [148 Cal.Rptr. 419, 582 P.2d 1010], relied upon by Standard as supporting an extremely narrow interpretation of the third party tort rationale, was itself given a very narrow interpretation in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 507-509 [198 Cal.Rptr. 551, 674 P.2d 253], where we confined the *Davis* limitations to products liability litigation. In *Gray,* we allowed recovery of attorney's fees under the third party tort rationale in an action by a prospective buyer against a real estate broker for fraud. We rejected the notion that recovery under this theory required exceptional circumstances.

[5]It is for this reason that Standard's reliance on Insurance Code section 1619 is misplaced. That section, enacted in 1949, allows specified attorney's fees awards against nonadmitted foreign or alien insurers in actions on an insurance contract. We fail to see how the Legislature could have intended a 1949 statute to affect a tort that was not established until 1958. (See *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Communale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-659 [328 P.2d 198, 68 A.L.R.2d 883].)

comparable only to the first part of the present action, i.e., for benefits due under insurance policies. In none of those cases was any allegation of bad faith made, which is the gravamen of the second part of the present action. Thus [the] plaintiffs in *Lowell, Patterson,* and *Carroll* sought attorney's fees in an action for prosecution of that very action, or . . . attorney's fees qua attorney's fees. Plaintiff[] here, however, seek[s] recovery of attorney's fees as damages, like any other damages, proximately caused by defendant's breach of its duty to deal in good faith." (*Austero, supra,* 132 Cal.App.3d at pp. 421-422 [dis. opn. by Morris, P. J.].)

The *Austero* majority's reliance on *Lowell, Patterson,* and *Carroll* blurred the distinction between bad faith conduct and nontortious but erroneous withholding of benefits. "[A]n erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been *unreasonable.* [Citations.] When no bad faith has been alleged and proved, *Lowell, Patterson,* and *Carroll* preclude the award of attorney's fees incurred in obtaining benefits that the insurer erroneously, but in good faith, withheld from the insured. However, when the insurer's conduct is unreasonable, a plaintiff is allowed to recover for all detriment proximately resulting from the insurer's bad faith, which detriment *Mustachio* has correctly held includes those attorney's fees that were incurred to obtain the policy benefits and that would not have been incurred but for the insurer's tortious conduct."[6] (*Austero, supra,* at p. 422.)  █   The fees recoverable, however, may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract. Fees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable.

Since the attorney's fees are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise. (See *Dinkins* v. *American National Ins. Co.* (1979) 92 Cal.App.3d 222, 234 [154 Cal.Rptr. 775].) A stipulation for a postjudgment allocation and award by the trial court would normally be preferable since the determination then would be made after completion of the legal services (see *Beneficial Standard Properties, Inc.* v. *Scharps* (1977) 67 Cal.App.3d

---

[6]The facts of *Mustachio* illustrate the difference between a good faith legal dispute and attorney's fees triggered by a tortious refusal to honor policy obligations: the case involved a fire loss. The insurer first suspected arson, but investigation by an expert negatived that possibility. Nevertheless, when Mustachio was dissatisfied with the insurer's settlement offer, the latter—instead of offering to sit down to resolve the differences—insinuated that Mustachio was criminally responsible for the fire. The implied threat of criminal prosecution so unsettled the insured that he sought the protection of counsel.

227, 232, fn. 3 [136 Cal.Rptr. 549]), and proof that otherwise would have been presented to the jury could be simplified because of the court's expertise in evaluating legal services. (*Fed-Mart Corp.* v. *Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 [168 Cal.Rptr. 525]; *Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 623 [134 Cal.Rptr. 602].)[7] If, however, the matter is to be presented to the jury, the court should instruct along the following lines: "If you find (1) that the plaintiff is entitled to recover on his cause of action for breach of the implied covenant of good faith and fair dealing, and (2) that because of such breach it was reasonably necessary for the plaintiff to employ the services of an attorney to collect the benefits due under the policy, then and only then is the plaintiff entitled to an award for attorney's fees incurred to obtain the policy benefits, which award must not include attorney's fees incurred to recover any other portion of the verdict."[8]

The alternative writ is discharged. Let a peremptory writ of mandate issue, commanding the trial court to vacate its order striking portions of petitioner's complaint.

Bird, C. J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**MOSK, J.**—I concur.

It is time, however, that we forthrightly overruled the decision, rendered by a divided court, in *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1 [148 Cal.Rptr. 419, 582 P.2d 1010]. (Maj. opn., *ante*, at p. 818, fn. 4.) In our unanimous opinion in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 508 [198 Cal.Rptr. 551, 674 P.2d 253], we restricted the *Davis* rule so severely that it is now limited in effect to one narrow category: products liability cases. Why there should be a different rule on attorney fees in products liability cases as distinguished from all other causes has never been adequately explained.

To avoid further confounding the bench and bar, we should make it clear that *Davis* is no longer viable and that the rule of the present case and of *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645], prevails in California.

---

[7] Rule 2-111(A)(4)(c) of the Rules of Professional Conduct provides a specific exception from the lawyer-witness provisions for testimony regarding the nature and value of legal services rendered.

[8] The instruction which triggered the award of attorneys' fees in *Austero* simply required the jury to find that "it was necessary for plaintiff to employ the services of an attorney to collect the benefits due them under these policies . . . ." The opinion makes nothing of it, but that instruction was clearly deficient, since it did not require a causal relation between the defendant's tortious breach of the covenant of good faith and the employment of counsel.

**LUCAS, J.**—I respectfully dissent. In my view, the trial court properly denied petitioner's request for attorney fees.

The American rule has long been that each party to litigation should bear his own attorney fees. (E.g., *Fleischmann Corp.* v. *Maier Brewing* (1967) 386 U.S. 714, 717-718 [18 L.Ed.2d 475, 478, 87 S.Ct. 1404].) The California Legislature first adopted this rule in 1851. (Stats. 1851, ch. 5, § 494, p. 128.)

The current statute on the subject reads, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021 [hereinafter section 1021].)

Although this court may have an inherent equitable power to award attorney fees in certain cases, we have "moved cautiously in expanding the nonstatutory bases on which awards of attorney's fees may be predicated." (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 636 [150 Cal.Rptr. 461, 586 P.2d 942].) We have acknowledged limited exceptions only "when overriding considerations of justice seemed to compel such a result." (*Fleishmann Corp., supra,* 386 U.S. at p. 718 [18 L.Ed.2d at p. 479].) "Three of these exceptions, discussed at length in *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 34-47 [141 Cal.Rptr. 315, 569 P.2d 1303], base recovery of attorney fees to the prevailing party on the fact that the litigation has conferred benefits on others. Thus, if the litigation has succeeded in creating or preserving a common fund for the benefit of a number of persons, the plaintiff may be awarded attorney fees out of that fund. (*Estate of Stauffer* (1939) 53 Cal.2d 124, 131-132 [346 P.2d 748].) Likewise, if a judgment confers a substantial benefit on a defendant, such as in a corporate derivative action, the defendant may be required to pay the attorney fees incurred by the plaintiff. (See, e.g., *Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 323-325 [72 Cal.Rptr. 146].) Finally, under the 'private attorney general' concept attorney fees may be awarded to those who by litigation secure benefits for a broad class of persons by effectuating a strong public policy. (*Serrano* v. *Priest, supra,* 20 Cal.3d 25, 42-47.)" (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253].) Petitioner does not contend that his request for attorney fees comes within any of these exceptions.

A fourth exception is the "third-party tort" situation. "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action *against a third person* is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred. [Cita-

tions.]" (Italics added, *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].) Likewise, petitioner does not claim his request for attorney fees comes within this exception.

Petitioner suggests, however, that section 1021 would not preclude recovery of attorney fees *as damages* incurred "independently" of the litigation in which the right to damages is established. According to petitioner, the "third-party tort" exception is only one example of the broader "collateral litigation" exception. Other examples include recovery of attorney fees occasioned by false imprisonment (*Nelson* v. *Kellogg* (1912) 162 Cal. 621-623 [123 P. 1115]) or by malicious prosecution (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 59 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]). Thus, petitioner asserts that in general a party should be allowed to recover attorney fees for legal services independently incurred, and that any limitations on this rule (e.g., *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5-8 [148 Cal.Rptr. 419, 582 P.2d 1010]) are the exceptions.

But in fact section 1021 applies with equal force to collateral litigation. In each of the examples mentioned above, it was not the fact of collateral litigation per se that led to the award. Attorney fees are given in false imprisonment or malicious prosecution suits not because collateral litigation is involved, but as sanctions against the abuse of process those two torts represent. Likewise, in the third party tort exception, it is the presence of the third party, not the existence of collateral litigation, that is the important factor. It is one thing for a tortfeasor to force the victim to sue him; in such a case the victim must bear his own attorney fees. But it is quite another thing for the tortfeasor to inject the victim into litigation with another person. Even so, the tortfeasor is not liable for attorney fees expended in the suit against the third party unless his tort was the proximate cause of the expense.

In *Davis* v. *Air Technical Industries, Inc., supra,* 22 Cal.3d 1, we held that defendant seller in a products liability suit could not recover attorney fees from defendant manufacturer, although ultimately all fault was laid at the manufacturer's feet. We reasoned that even though the manufacturer's tort (faulty design) was responsible for bringing the seller into litigation with the buyer, the seller could not recover attorney fees he had incurred exclusively to defend against allegations of his own negligence. (22 Cal.3d at pp. 6-7.)

Furthermore, even if there were some general exception for collateral litigation, the present type of case would not appear to qualify. It is contended that we can find collateral litigation in the fact that the insured has

two causes of action against the insurance company: one for breach of contract and one for violation of the duty of good faith and fair dealing. The contract suit is regarded as if it were a prior suit and the tort suit as if it were a later suit; since the insurer's tort is what caused it to deny benefits, the suit to recover benefits was occasioned by the tort and therefore in the tort suit the insured should be allowed to recover the attorney fees he expended in the contract suit.

But this analysis appears to mistake the nature of the bad faith tort. When an insurance company withholds payments in bad faith its actions amount to both a breach of contract and a tort, but two separate breaches of duty are not involved. The single duty breached—the covenant of good faith and fair dealing—"springs from the contractual relationship between the parties." (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744].) The plaintiff may bring suit on both contract and tort theories, but ultimately he must elect which remedy to pursue. (See *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 432 [58 Cal.Rptr. 13, 426 P.2d 173].) There simply is no collateral suit from which attorney fees may be recovered.

The analysis of the Court of Appeal in *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358 [118 Cal.Rptr. 581], is similarly flawed. Focusing on the fact that the insurer's breach of the duty of good faith constitutes a tort, the court concluded that plaintiff insured was entitled to attorney fees because his employment of an attorney was proximately caused by the insurer's tort. (P. 363.) Admittedly, plaintiff's employment of an attorney was a foreseeable consequence of defendant insurer's breach, but this logic would apply to *any* tort suit to which a collateral cause of action is attached, effectively allowing the exception to swallow the American rule on attorney fees.[1]

The *Mustachio* opinion failed to follow the logic of the proposed collateral litigation exception to its end. Rather, the court argued that there is something special about an insurance contract that requires its bad faith breach by an insurer to be treated differently from any other tort suit. The relationship between an insured and his insurer may involve a fiduciary relationship (see *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [169 Cal.Rptr. 691, 620 P.2d 141]), but we have recently held that tortious breach of such a relationship is not a sufficient basis for creating an exception to section 1021. (*Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d at pp. 506-507.)

---

[1]Although *Mustachio* discusses only attorney fees incurred by reason of defendant's tort, the analysis appears equally applicable to breach of contract situations because a contract plaintiff is entitled to recover "all . . . detriment proximately caused." (Civ. Code, § 3300.)

The mere fact that an insurance contract is bought to secure peace of mind (see *Mustachio* at p. 363) is not a sufficient reason to create an exception to section 1021. In *Crisci,* we discussed the peace of mind of the insured as a basis for granting the type of damages most appropriate to compensate an insured for the disturbance of his tranquility: damages for emotional distress. (See *Crisci* v. *Security Ins. Co.,* supra, 66 Cal.2d at pp. 432-434.) Such damages alone should be enough to compensate for an insured's loss of peace of mind.

Even if emotional distress damages are insufficient, an insured may seek numerous additional items of damage in an action for bad faith breach of contract that he could not obtain for simple breach of contract. He may recover for awards against him in excess of the policy limits if the insurer has refused in bad faith to settle within the policy limits. (*Crisci, supra,* 66 Cal.2d at p. 430.) He may recover all economic loss proximately caused. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 401-402 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) If he can prove oppression, fraud or malice, he may recover punitive damages. (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at pp. 819-821.) Given the numerous types of damages that the plaintiff may recover for a tortious breach of his insurance contract, any or all of which can and often do exceed the policy limits, I can see no persuasive need to create an exception to the general rule that each party must bear his own attorney fees.

The *Mustachio* opinion implies that tortious breach of an insurance contract is such a serious abuse that attorney fees must be awarded as well: "If the insurer, instead of bargaining with the insured in good faith, tortiously violates its covenant of good faith and fair dealing and thereby makes it reasonable for the insured to seek the protection of counsel, plain justice demands that the insurer be financially responsible for an expense which but for its tortious conduct would not have been incurred. [Fn. omitted.]" (44 Cal.App.3d at p. 364.)

But it must be remembered that an insured need not establish the level of misconduct shown by the insurance company in *Mustachio* in order to recover on a bad faith tort. He must prove only that the insurance company acted negligently, i.e., that a "prudent insurer" would have paid the claim. (See *Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 818.) Mere breach of the duty of good faith is "not meant to connote the absence or presence of positive misconduct of a malicious or immoral nature . . . ." (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 921-922, fn. 5 [148 Cal.Rptr. 389, 582 P.2d 980].) Such negligence on the part of the insurer is enough to warrant an award of damages for emotional distress, economic loss, and the like because of the special nature of the insurance contract,

but it is not such an abuse of process as to justify an award of attorney fees. The argument is more convincing when the insurer has acted with malice, but in that case punitive damages may be awarded; when punitive damages are not justified, I can see little reason for an award of attorney fees.

For the reasons stated, I would deny the peremptory writ.