## GRANITE MANAGEMENT CORPORATION, a Delaware Corporation, Plaintiff—Appellee,

v.

## AETNA CASUALTY & SURETY COMPANY, a Connecticut Corporation, Defendant—Appellant.

**Granite Management Corporation, a Delaware Corporation, Plaintiff—Appellant,**

v.

**Aetna Casualty & Surety Company, a Connecticut Corporation, Defendant—Appellee.**

Nos. 00–16589, 00–16680.
D.C. No. CV–97–04022–SI.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2002.

Decided June 4, 2002.

---

Before O'SCANNLAIN and TALLMAN, Circuit Judges, and KING,* District Judge.

## MEMORANDUM **

Aetna Casualty & Surety Company appeals a judgment in favor of Granite Management Corporation finding Aetna liable for bad faith and awarding substantial damages. Granite conditionally cross-appeals the dismissal of its claim for punitive damages. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. We thus dismiss Granite's cross-appeal as moot.

Because the facts and prior proceedings are known to the parties, we restate them only as necessary to explain our disposition.

### 1. *Endorsement No. 5*

The first issue is whether the trial court correctly determined as a matter of law, for purposes of Granite's bad faith claim, that Endorsement No. 5 was ambiguous and created a duty for Aetna to defend Granite in the underlying "Smoke Tree litigation" (*"Smoke Tree"*).[1] Our answer is yes.

The court reviews grants of summary judgment de novo. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001). "The meaning and interpretation of an insurance contract is a question of law reviewed de novo." *HS*

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. When the district court determined that Aetna had a duty to defend, there no longer was a suit to defend against because *Smoke Tree* settled in March of 1997. The question is whether Aetna's *prior* failures to defend were wrong and ultimately in bad faith.

*Servs., Inc. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642, 644 (9th Cir.1997).

There are two distinct but related ways to trigger a duty to defend. "An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy, *or* when the underlying suit potentially seeks damages within the coverage of the policy." *Foster–Gardner, Inc. v. Nat'l Union Fire Ins. Co.,* 18 Cal.4th 857, 77 Cal. Rptr.2d 107, 959 P.2d 265, 273 (Cal.1998) (emphasis added); *see also Montrose Chem. Corp. of Cal. v. Superior Court,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153, 1160 (Cal.1993). The district court correctly granted Granite's motion for partial summary judgment regarding Endorsement No. 5 under the first test.

The endorsement is ambiguous. The ambiguity was not susceptible of resolution after "interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation." *Safeco Ins. Co. of Am. v. Robert S.,* 26 Cal.4th 758, 110 Cal.Rptr.2d 844, 28 P.3d 889, 893 (Cal.2001) (citation omitted). The issue remained disputed after the district court considered extrinsic evidence of intent. The ambiguity was therefore correctly resolved against Aetna and in favor of coverage. *See id.; see also Smith Kandal Real Estate v. Cont'l Cas. Co.,* 67 Cal.App.4th 406, 79 Cal.Rptr.2d 52, 56 (Ct.App.1998) ("If an exclusion ambiguously lends itself to two or more reasonable constructions, the ambiguity will be resolved against the insurer and in favor of coverage.").

■ A trial on the meaning of Endorsement No. 5 was not required because the dispute of fact was not material. The question at summary judgment was whether Endorsement No. 5 was ambiguous so as to have triggered a duty to defend. That is, even given a dispute of fact about the ultimate meaning of Endorsement No. 5, there was no dispute that the language was ambiguous. The very fact that there was an ambiguity regarding coverage (construed in favor of Granite) triggered Aetna's duties. The ultimate question for trial was whether Aetna had acted in bad faith by failing to defend previously. The court determined only that Aetna should have defended; it left for a jury the question whether the failure to defend was in bad faith.

Likewise, because the insurer's duties were established, the district court properly determined that its ruling (that *Smoke Tree* was not excluded) had answered the reimbursement question. *See AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253, 1264 (Cal. 1990) (In Bank); *see also Consol. Am. Ins. Co. v. Mike Soper Marine Servs.,* 951 F.2d 186, 188 (9th Cir.1991) ("[I]n order to protect the insured's reasonable expectation of coverage in a situation where the insurer controls the language of the policy, if possible, the contract is construed in accordance with its objective of providing *indemnity for losses* to which the insurance relates.") (citing *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764, 768 (Cal.1982)) (emphasis added).

2. *Summary Adjudication of Aetna's Prior Coverage Defenses*

■ Aetna argues that the trial court violated California's "litigation privilege," set forth in Cal. Civ.Code. § 47(b), by considering Aetna's pleadings as evidence of bad faith when it granted Granite's motion for summary adjudication regarding Aetna's prior coverage defenses in the "Meadow Brook litigation" (*"Meadow Brook"*). *See Cal. Physicians' Serv. v. Superior*

*Court,* 9 Cal.App.4th 1321, 12 Cal.Rptr.2d 95, 97–98 $ n. 4 (Ct.App.1992).

The court reviews grants of "summary adjudication" motions de novo. *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1046 (9th Cir.1998) (reviewing a partial summary judgment motion adjudicating liability).[2]

We reject Aetna's arguments. Even if the district court did consider some pleadings, they were not the sole basis for Granite's bad faith claim. The facts that Granite sought to establish—(1) Aetna had previously lost in *Meadow Brook* the "side agreement" and "premium" arguments, and (2) Aetna later reasserted the arguments against Granite—could easily be gleaned almost entirely from the denial letters themselves.[3] The denial letters, along with the ADR opinion deciding the appeal in *Meadow Brook,* which the district court also considered, contained all the necessary information. The district court did not even need to consider Aetna's pleadings. Furthermore, Granite's bad faith theory was also heavily based upon an allegedly inadequate and biased investigation, separate from Aetna's reassertion of the judicially-discredited defenses.

■ Moreover, the pleadings became relevant to Granite's bad faith claim to the extent Aetna claimed it did not rely on the judicially-rejected defenses in declining coverage. The district court thus did not err in allowing pleadings as impeachment

evidence. *See Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 232 Cal.Rptr. 567, 728 P.2d 1202, 1208 (Cal.1986) ("It is quite clear that section [47(b)(2)] has never been thought to bar the *evidentiary* use of every 'statement or publication' made in the course of a judicial proceeding.... [W]hile section [47(b)(2)] bars certain tort causes of action which are predicated on a judicial statement or publication itself, the section does not create an evidentiary privilege for such statements.").

Likewise, we reject Aetna's argument regarding footnote 2a in the ADR appellate panel's opinion in *Meadow Brook.* Granite did not use the ADR panel's opinion to give automatic preclusive effect in *Smoke Tree.* Rather, Granite's argument was that Aetna forced it to re-litigate the coverage issues even though other jurists had twice ruled against Aetna. The jury was allowed to consider Aetna's argument that footnote 2a made it reasonable for it to deny coverage in *Smoke Tree,* but the jury rejected it.

## 3. *Bad Faith*

Aetna attacks several jury instructions on bad faith. "We review a district court's formulation of civil jury instructions for an abuse of discretion." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir.2001). "When the alleged error is in the formulation of the instructions, the instructions

---

**2.** We need not reach whether Fed.R.Civ.P. 56(d) is a proper vehicle to adjudicate specific facts because, even assuming arguendo that there was error, it was harmless. Other procedural means, such as a motion specifically under Rules 56(a), (b), or (c); a pretrial motion in limine; Fed.R.Civ.P. 16; or a general motion under Fed.R.Civ.P. 7(a), would have allowed such "partial summary adjudication." *Cf. Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1441 (9th Cir.1990) (authorizing a partial summary judgment motion under Rule

56(c) as a method of establishing collateral estoppel or res judicata, even if such a ruling would not necessarily dispose of an entire claim). At this point, after trial, it would be pointless to remand to re-adjudicate the same question under a different rule.

**3.** Moreover, Aetna would likely be barred by collateral estoppel from reasserting those defenses in *Smoke Tree.*

are to be considered as a whole and an abuse of discretion standard is applied to determine if they are misleading or inadequate." *Id.* A district court has broad discretion in tailoring jury instructions so long as the instructions fairly and adequately cover the issues presented, correctly state the law, and are not misleading. *Kendall–Jackson Winery,* 150 F.3d at 1051.

◼ The district court did not abuse its discretion in giving an instruction stating that "[i]n the insurance context, ambiguities in the language of policies are generally resolved in favor of coverage." The instruction is a correct statement of California law. *See, e.g., Safeco,* 110 Cal. Rptr.2d 844, 28 P.3d at 893. It was relevant to Granite's bad faith theory, which argued in part that Aetna ignored this general legal principle in denying coverage. The context was also clear; the instruction was given after explaining other ambiguity principles—which Aetna had proposed—applicable to the case.

The district court also did not abuse its discretion in failing to give the other bad faith instructions proffered by Aetna. These instructions were superfluous. The bad faith instructions that the court did give adequately stated Aetna's theory that it acted reasonably in denying coverage based upon an ambiguous provision.

Aetna also claims there was insufficient evidence to support the jury's verdict. We must uphold a jury's verdict if it is supported by "substantial evidence." *Johnson v. Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222, 1227 (9th Cir.2001). "Substantial evidence is evidence adequate to support the jury's conclusion, even it if is possible to draw a contrary conclusion from the same evidence." *Id.* The credibility of witnesses and the weight of the evidence are jury issues and generally are not subject to appellate review. *Three*

*Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir.2000).

◼ Ample evidence supports the jury's finding that Aetna's failure to defend was unreasonable. *See Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1036 (Cal.1973) (In Bank). Granite's theory was that Aetna's investigation was tailored toward denying the *Smoke Tree* claim, rather than toward determining whether Aetna should defend. Granite had evidence that Aetna did not investigate the effect the sale of Smoke Tree had on Endorsement No. 5, failed to contact Granite to seek to understand Granite's position on the exclusion, and conducted no independent review of the underwriting files. *See, e.g., Egan v. Mut. of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 145 (Cal.1979) (In Bank). Granite also had evidence that Aetna's claims adjuster violated internal Aetna procedures for denying claims by denying the claim without the involvement of the local manager, the Aetna legal department, or the home office. The declination letter apparently was not signed, reviewed, or approved by the adjuster's manager. The adjuster also apparently did not sufficiently document her handling or evaluation of the claim. Although Aetna contended that she acted in accordance with Aetna's policies, this presented a factual issue for the jury.

Further, Granite had evidence that Aetna ignored well-settled principles of insurance law, such as construing ambiguities in favor of coverage and construing exclusions narrowly. Given that Endorsement No. 5 was ambiguous (and Granite's argument that there was no genuine dispute about it), then certainly there was a possibility it would be construed in favor of coverage triggering at least a duty to de-

fend. This is evidence of an unreasonable denial.

### 4. The "Genuine Dispute" Doctrine

Next, Aetna invokes the "genuine dispute" doctrine and contends that it cannot be liable for bad faith as a matter of law because it relied upon an ambiguous policy provision. *See, e.g., Guebara*, 237 F.3d at 992.

■ The "genuine dispute" doctrine does not insulate Aetna here for several reasons. First, even given the dispute about Endorsement No. 5, the ultimate question was whether the failure to defend was unreasonable under all the circumstances. Granite pointed to other factors besides the Endorsement No. 5 ambiguity to indicate an unreasonable denial. (And the trial court essentially found that there was *no* "genuine dispute" about coverage.) Granite's theory was that if Aetna had properly investigated, it would have realized (or should have realized) that there was an obvious ambiguity that triggered at least a duty to defend under a reservation of rights.

Second, Granite's position was not based solely upon the "unreasonableness" of Aetna's reading of Endorsement No. 5. Rather, its position was that Aetna was liable for bad faith for, among other reasons, raising judicially rejected defenses (the "side agreement" and the "premium" arguments). Even if there were a "genuine dispute" regarding Endorsement No. 5, there was no "genuine dispute" regarding the "side agreement" and "premium" arguments after the superior court's decision in *Meadow Brook* and especially after the ADR appellate opinion. And, as stated earlier, Aetna's reliance on footnote 2a of the opinion at least raised a jury question.

### 5. Attorney's Fees

■ Aetna posits that *Brandt v. Superior Court*, 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (Cal.1985) (In Bank), entitled Granite only to fees incurred in obtaining coverage under the "wrap up" policies. Aetna contends that fees incurred in pursuing coverage under the "bank" and "multi-family" policies would not be recoverable because Granite never established that it was entitled to benefits under those other types of policies. Aetna had offered instructions limiting *Brandt* fees to the "wrap up" policies only.

It is true that Granite established a right to coverage only under the "wrap up" policies (the court found no coverage under the bank policies and Granite dropped its claim under the multi-family policies). Nevertheless, when Granite began this litigation, it was an insured under 12 separate Aetna CGL policies (4 of which were "wrap up" policies) in the three different categories. Granite had tendered the defense under all 12 policies. It had a good faith basis for coverage under all three types. It had no way of knowing which would succeed. Under *Brandt*, all fees incurred in pursuing all three types were "proximately [caused by] the insurer's bad faith." *Id.* at 800 (internal quotation marks omitted). All those fees "would not have been incurred but for the insurer's tortious conduct." *Id.* (internal quotation marks omitted).

The law given to the jury was not wrong. Aetna has cited no authority requiring the court or jury to allocate fees between policies if recovery was ultimately based only on one type of policy. The court's instructions as given enabled Aetna to argue its allocation theory to the jury.

Appeal No. 00–16589 is AFFIRMED. Appeal No. 00–16680 is DISMISSED as

moot.[4]

---

4. Granite's cross-appeal was conditioned upon a remand on Aetna's appeal.

