[No. S131992. July 6, 2006.]

ESSEX INSURANCE COMPANY, Plaintiff, Cross-defendant, and Appellant, v.
FIVE STAR DYE HOUSE, INC., Defendant, Cross-complainant, and Respondent.

**COUNSEL**

Carroll, Burdick & McDonough, David M. Rice, Laurie J. Hepler, Troy M. Yoshino, Don Willenburg, John D. Boyle, Donna P. Arlow; Murchison & Cumming, Jean M. Lawler, Edmund G. Farrell and Bryan M. Weiss for Plaintiff, Cross-defendant and Appellant.

Wiley Rein & Fielding, Laura A. Foggan, Gary P. Seligman; Sinnott, Dito, Moura & Puebla, Randolph P. Sinnott and John J. Moura for Complex Insurance Claims Litigation Association as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Dodell Law Corporation, Herbert Dodell and Gerald J. Miller for Defendant, Cross-complainant and Respondent.

Gianelli & Morris, Robert S. Gianelli, Sherril Nell Babcock; Ernst & Mattison, Don A. Ernst and Raymond E. Mattison for Consumer Attorneys of California as Amicus Curiae on behalf of Defendant, Cross-complainant and Respondent.

**OPINION**

**KENNARD, J.**—In *Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] (*Brandt*), this court held that in a tort action against an insurance company for breach of the duty of good faith and fair dealing, an insured may recover as damages those attorney fees that are incurred in the same action and are attributable to the attorney's efforts to recover policy benefits that the insurer has wrongfully withheld. We reasoned that when an insurer's tortious conduct consists of depriving its insured of policy benefits, the attorney fees that the insured reasonably and necessarily incurs to obtain those policy benefits constitute an economic loss proximately caused by the insurer's tort, and thus those attorney fees (now commonly referred to as *Brandt* fees) are recoverable as tort damages. (*Id.* at pp. 817–819.)

The issue here is this: When an insured assigns a claim for bad faith against the insurer, and the assignee brings a tort action against the insurer that includes a claim for wrongfully withheld policy benefits, may the assignee recover *Brandt* fees? Our answer is "yes."

## I. Facts and Procedural Background

Luis Sanchez, doing business as L.A. Machinery Moving (hereafter Sanchez), was in the trucking business, specifically, transporting commercial machinery. In June 1994, Sanchez contracted to deliver two commercial dryers to Five Star Dye House, Inc. (Five Star), a designer jeans manufacturer that uses dryers in the manufacturing process. During transportation of the dryers, one fell while on Sanchez's truck and was damaged. Five Star refused to accept delivery of the damaged dryer.

Five Star sued Sanchez for negligence (the underlying action), seeking as damages the profits it lost while the damaged dryer was being repaired. Sanchez tendered defense of the action to his liability insurance carrier, Essex Insurance Company (Essex). Essex denied coverage, however, and refused to defend Sanchez in the action. Sanchez undertook a defense using his own funds; the trial resulted in a judgment against him for $1.35 million, plus costs.

Sanchez then assigned to Five Star all of his claims and causes of action against Essex.[1] In exchange, Five Star agreed to delay execution on the judgment in the underlying action until the claims against Essex for the judgment amount were exhausted. Notwithstanding the assignment, Sanchez remained liable for the full judgment amount, plus interest.[2]

Essex then filed this action in superior court for declaratory relief against both Five Star and Sanchez. Essex sought a declaration that it did not have a duty to defend Sanchez in the underlying action. Under the assignment from Sanchez, Five Star cross-complained against Essex for, among other claims, breach of contract and tortious breach of the covenant of good faith and fair dealing. During the course of the litigation, Sanchez was dismissed as a defendant in the declaratory judgment action, based on his assignment of all claims to Five Star.

---

[1] Not before us is the validity of the underlying assignment. Therefore, for purposes of analysis, we assume its validity.

[2] The assignment states: "Luis Sanchez, dba L.A. Machinery Movers ('Assignor'), conveys and assigns to Five Star Dye House, Inc., ('Assignee'), all of its rights, remedies, titles and/or interest in and to any and all claims and/or causes of action against Essex Insurance Company ('Essex'), arising from the facts and circumstances regarding the lawsuit filed in the Superior Court of the State of California for the County of Los Angeles, bearing Case No. BC 119424, entitled Five Star Dye House, Inc. v. Rosco Machine Company, et al., ('Five Star Lawsuit'), including but not limited to, claims and/or causes of action for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraud and Declaratory Relief arising from Essex' failure to provide a defense or indemnity to Assignor arising from the Five Star Lawsuit . . . . In exchange for this assignment, Assignee agrees to defer collection of the judgment against Assignor until such time as all efforts to collect the judgment against Essex and/or any insurance broker and/or agent . . . have been exhausted."

The trial court found the existence of an insurance contract between Sanchez and Essex, potential coverage under that policy for Five Star's claim against Sanchez, and bad faith by Essex in not defending Sanchez in the underlying action. The court awarded Five Star $1.6 million in damages against Essex, but it denied Five Star's request for *Brandt* fees.

The Court of Appeal affirmed the trial court's judgment against Essex, but it reversed as to the denial of attorney fees. The Court of Appeal held that when an insured assigns a bad faith cause of action against an insurer, the assignee receives the right to recover the policy benefits in full, including *Brandt* fees. The court expressly disagreed with another Court of Appeal decision, *Xebec Development Partners, Ltd. v. National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 572 [15 Cal.Rptr.2d 726] (*Xebec*), which held to the contrary.

We granted Essex's petition for review to determine whether assignment of a tort action against an insurer for wrongfully withholding policy benefits includes the right to recover *Brandt* fees.

## II.  LEGAL BACKGROUND

### A.  *The American Rule and* Brandt

Embodied in Code of Civil Procedure section 1021, the "American rule" states that except as provided by statute or agreement, the parties to litigation must pay their own attorney fees. In addition to its various statutory exceptions (see, e.g., Civ. Code, § 1717), the American rule is subject to common law exceptions that this court has created. (*Trope v. Katz* (1995) 11 Cal.4th 274, 279 [45 Cal.Rptr.2d 241, 902 P.2d 259].) *Brandt, supra,* 37 Cal.3d 813, is the source of one such exception.

In *Brandt,* an insured sued the insurer for breach of the implied covenant of good faith and fair dealing, seeking damages that included attorney fees. (*Brandt, supra,* 37 Cal.3d at p. 816.) Citing the American rule and Code of Civil Procedure section 1021, the trial court struck the portion of the complaint seeking attorney fees. (*Brandt, supra,* 37 Cal.3d at p. 816.) We held that when an insurer denies coverage in bad faith, the insured can recover attorney fees in an action to recover the policy benefits. (*Id.* at p. 817.)

After observing that an insurer's breach of the covenant of good faith and fair dealing is a tortious act, we reasoned in *Brandt*: " 'When such a breach occurs, the insurer is "liable for any damages which are the proximate result of that breach." [Citation.]' [Citation.] [¶] When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort. [Citation.] These fees must be distinguished from recovery of attorney's fees *qua* attorney's fees, such as those attributable to the bringing of the bad faith action itself. What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Brandt, supra*, 37 Cal.3d at p. 817.)

In a tort action for wrongful denial of policy benefits, *Brandt* allows the insured to recover as tort damages only the attorney fees incurred to obtain the policy benefits wrongfully denied. (*Brandt, supra*, 37 Cal.3d at p. 819.) But attorney fees expended to obtain damages exceeding the policy limit or to recover other types of damages are not recoverable as *Brandt* fees. (*Ibid.*; see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 811–812 [16 Cal.Rptr.3d 374, 94 P.3d 513] [attorney fees to obtain emotional distress damages and punitive damages not recoverable under *Brandt*].) This follows from the rationale of *Brandt*: The tort of bad faith against the insured entitles the insured to recover the policy benefits *in full*, undiminished by attorney fees, but not to recover attorney fees in general. Allowing recovery of attorney fees incurred to obtain damages beyond the policy limit or to obtain punitive damages would allow the insured to recover attorney fees as attorney fees, violating the American rule, embodied in Code of Civil Procedure section 1021, that parties generally must pay their own attorney fees. "Rather, *Brandt* merely entitles the insured to all of the benefits due under the policy, undiminished by the expenses incurred in retaining an attorney to recover under the policy." (*Cassim v. Allstate Ins. Co., supra,* at p. 815 (conc. & dis. opn. of Baxter, J.).)

This court has in various decisions reaffirmed *Brandt*'s rule awarding attorney fees to an insured who is injured by the bad faith conduct of the insurer. (*Cassim v. Allstate Ins. Co., supra,* 33 Cal.4th at p. 806, fn. 10; *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 890 [221 Cal.Rptr. 509, 710 P.2d 309]; see also *Track Mortgage Group, Inc. v. Crusader Ins. Co.* (2002) 98 Cal.App.4th 857, 867 [120 Cal.Rptr.2d 228]; *Campbell v. Cal-Gard*

*Surety Services, Inc.* (1998) 62 Cal.App.4th 563, 571–572 [73 Cal.Rptr.2d 64].) The *Brandt* rule is now a well-settled but narrow exception to the general rule that each party to litigation must pay its own attorney fees.

### B. *The General Rule of Assignability*

■      California, as set forth both in case law and by statute, maintains a policy encouraging the free transferability of all types of property. (See Civ. Code, §§ 954, 1044, 1458; *Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 222 [308 P.2d 732]; *Robert H. Jacobs, Inc. v. Westoaks Realtors, Inc.* (1984) 159 Cal.App.3d 637, 645 [205 Cal.Rptr. 620].)[3] "[I]t is a fundamental principle of law that one of the chief incidents of ownership in property is the right to transfer it." (*Bias v. Ohio Farmers Indemnity Co.* (1938) 28 Cal.App.2d 14, 16 [81 P.2d 1057].)

This "chief incident of ownership" applies equally to tangible and intangible forms of property, including causes of action. Originally codified in 1872, section 954 states: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." An assignment is a commonly used method of transferring a cause of action.

Although the assignability of causes of action is derived from the common law, section 954 had the effect of liberalizing restrictions on the types of actions that may be assigned to a third party. (*Wikstrom v. Yolo Fliers Club* (1929) 206 Cal. 461, 464 [274 P. 959].) We summarized the resulting state of the law as to the assignability of claims in *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822 [69 Cal.Rptr. 321, 442 P.2d 377] (*Reichert*). In *Reichert*, the plaintiff purchased a 325-unit motel and received assignments of multiple fire insurance policies for the premises. (*Id.* at pp. 825–826.) Later, a fire caused significant damage to the motel. (*Id.* at p. 826.) After the insurance companies failed to indemnify the plaintiff for the damages, the plaintiff lost possession of the motel in bankruptcy. (*Id.* at pp. 826–827.) When the plaintiff sued the insurance companies for the resulting loss, they demurred to the complaint on the ground that the plaintiff's causes of action had passed to the trustee in bankruptcy. (*Id.* at pp. 828–829.) Under bankruptcy law, the trustee in bankruptcy received all causes of action that the bankrupt could have assigned. (*Id.* at p. 829, citing 11 U.S.C. § 110.) Thus, whether the plaintiff's causes of action against the insurance companies were assignable was the central question in *Reichert*. (*Reichert, supra,* at pp. 829–830.)

---

[3] Unless otherwise stated, all further statutory references are to the Civil Code.

This court in *Reichert* defined when a cause of action is assignable: "As a general proposition it can be said ' "that the only causes or rights of action which are not transferable or assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims and rights of action whatever are generally held to be transferable." ' " (*Reichert, supra,* 68 Cal.2d at p. 834, quoting *Wikstrom v. Yolo Fliers Club, supra,* 206 Cal. at p. 463.) We concluded that the plaintiff's causes of action against the insurance companies for breach of their duties under the insurance policies were assignable, and thus they passed to the trustee in bankruptcy. (*Reichert, supra,* at pp. 830, 835–837.)

Actions for bad faith against insurance companies can introduce problematic elements into this seemingly bright-line rule defining assignability of causes of actions, as shown by this court's decision in *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584] (*Murphy*). There, the plaintiff sought to enforce a judgment obtained in an earlier tort action by bringing a direct action against the tortfeasor's insurance company, alleging breach of the insurer's duty to the insured (the tortfeasor) by refusing to settle within policy limits. (*Murphy, supra,* at pp. 939–940.) The trial court granted judgment on the pleadings for the defendant insurance company, and the plaintiff appealed. (*Id.* at p. 939.)

The plaintiff argued that the action was authorized by Insurance Code section 11580, subdivision (b)(2), or, alternatively, by former Code of Civil Procedure section 720. (*Murphy, supra,* 17 Cal.3d at p. 940.) This court found that the plaintiff could not pursue the claim under Insurance Code section 11580, subdivision (b)(2). That provision merely made the judgment creditor a third party beneficiary of the insurance contract, allowing the judgment creditor to enforce only those contract provisions that were designed to benefit injured claimants. The duty to settle and the covenant of good faith and fair dealing, however, were designed to benefit the insured, not injured third party claimants. (17 Cal.3d at pp. 942–944.)

This court in *Murphy* next considered former Code of Civil Procedure section 720, which then provided: " 'If it appears that a person or corporation, alleged to have property of the judgment debtor, or to be indebted to him, claims an interest in the property adverse to him, or denies the debt, the judgment creditor may maintain an action against such person or corporation for the recovery of such interest or debt . . . .' " (*Murphy, supra,* 17 Cal.3d at p. 945, fn. omitted; see now Code Civ. Proc., § 708.210 ["If a third person

has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment."].) Under this provision, the judgment creditor may assert only those causes of action belonging to the judgment debtor that are assignable. (*Murphy, supra,* 17 Cal.3d at pp. 945–946.) Thus, this court in *Murphy* addressed the question whether the insured's causes of action against the insurer for breach of the duty to settle and breach of the covenant of good faith and fair dealing were assignable. (*Id.* at pp. 945–946.)

Under the particular facts at issue, we concluded that although the cause of action itself was assignable, it potentially included damages that were not assignable and therefore not recoverable in an action under former section 720 of the Code of Civil Procedure. (*Murphy, supra,* 17 Cal.3d at p. 946.) "The insured may assign his cause of action for breach of the duty to settle without consent of the insurance carrier, even when the policy provisions provide the contrary. [Citation.] However, part of the damage arises from the personal tort aspect of the bad faith cause of action. [Citation.] And because a purely personal tort cause of action is not assignable in California, it must be concluded that damage for emotional distress is not assignable. [Citations.] The same is true of a claim for punitive damage." (*Murphy, supra,* 17 Cal.3d at p. 942.)

This court in *Murphy* described the bad faith action against the insurer as a "hybrid cause of action," one comprised of both assignable and nonassignable components. (*Murphy, supra,* 17 Cal.3d at p. 946.) Because the cause of action could not be split, allowing the injured claimant to proceed under former section 720 of the Code of Civil Procedure would deprive the insured of any opportunity to recover the nonassignable damages (emotional distress damages and punitive damages) and thereby "defeat the very purpose of the cause of action." (*Murphy, supra,* at p. 946.) Although we concluded in *Murphy* that the action was barred, we suggested how an assignment might be used in this situation to protect the interests of both the insured and the claimant: "Requiring assignment before the claimant may proceed would of course insure notice to the insured that the claimant wished to proceed against the insurer. At that point the insured would have the choice of partially assigning and then joining in the action, or of bargaining for a release from liability in excess of coverage. The release would permit the insured to protect himself from continued exposure to personal liability. Further, because the judgment creditor would then both own and control the

cause of action against the insurer, he could attempt to satisfy his judgment thereby. Finally, the insured could protect his right to nonassignable claims for punitive, emotional and personal injury damage." (*Id.* at pp. 946–947.)

## C. *Conflicting Court of Appeal Decisions*

In *Xebec, supra,* 12 Cal.App.4th 501, Xebec Corporation entered into an agreement with Xebec Development Partners (XDP), whereby XDP would provide nearly $14 million to Xebec Corporation for research and development, and Xebec Corporation in exchange would assign to XDP the rights to new technology. (*Id.* at p. 517.) Later, XDP sued Xebec Corporation and two of its officers for misappropriating the funds earmarked for research and development. (*Ibid.*) National Union Fire Insurance Company (National Union) claimed it had not received timely notice of the lawsuit and on this basis declined to defend the Xebec Corporation officers in the suit, which resulted in a stipulated arbitration award against Xebec Corporation and the two officers, on which judgment was then entered, in excess of $9 million. (*Id.* at pp. 521–523.) The arbitration settlement agreement included provisions under which Xebec Corporation assigned to XDP its rights against National Union. (*Id.* at p. 523.) Under this assignment, XDP sued National Union for refusing in bad faith to defend the officers of Xebec Corporation in the original lawsuit. (*Id.* at p. 524.)

The action was tried to a jury, which returned a general verdict against National Union for more than $7 million, and the trial court awarded XDP attorney fees under *Brandt, supra,* 37 Cal.3d. 813. (*Xebec, supra,* 12 Cal.App.4th at pp. 526, 571.) In a lengthy opinion dealing with a variety of issues arising from the complicated underlying factual situation, the *Xebec* Court of Appeal reversed the trial court's ruling as to the award of *Brandt* fees to XDP, devoting just over one page to that issue. (*Id.* at pp. 571–572.)

The Court of Appeal in *Xebec* observed that XDP was "a third party claimant" and a "stranger to the policy." (*Xebec, supra,* 12 Cal.App.4th at p. 572.) As an assignee of the insured, XDP "could assert only those rights the insureds had had, and it could assert the rights only in the stead of the insureds." (*Ibid.*) Because none of the insureds had incurred attorney fees to compel payment of policy benefits, the Court of Appeal concluded that XDP could not assert their rights under *Brandt,* nor could it assert a right to *Brandt* fees on its own behalf because "the fees it thus incurred cannot be construed as *tort damages* to XDP, because National Union had no duty *to XDP* to pay policy benefits to anyone." (*Ibid.,* original italics.)

In this case, the Court of Appeal expressly disagreed with that analysis. It focused on this court's language in *Murphy, supra,* 17 Cal.3d at page 942, and in *Reichert, supra,* 68 Cal.2d at page 834, articulating the principle that all tort claims are assignable under section 954 except those of a purely personal nature. The Court of Appeal here reasoned that *Brandt* fees constitute an economic loss and are not personal in nature, and therefore under section 954 the right to recover *Brandt* fees is assignable. It rejected Essex's argument that because *Brandt* fees are tort damages, only fees incurred *by the insured* are recoverable. It observed that the right assigned by Sanchez was the right to recover the policy benefits in full, "undiminished by the attorney fees incurred in bringing the actions to recover those benefits," and that "[t]he identity of the party incurring attorney fees to vindicate the insured's rights under the insurance policy is irrelevant . . . ."

## III. Analysis

We start from the proposition that assignability is the rule. (§ 954.) From that general rule we except those tort causes of actions " ' "founded upon wrongs of a purely personal nature." ' " (*Reichert, supra,* 68 Cal.2d at p. 834.) Actions for bad faith against an insurer have generally been held to be assignable (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661–662 [328 P.2d 198]), including claims for breach of the duty to defend (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 728 [117 Cal.Rptr.2d 318, 41 P.3d 128]). Although some damages potentially recoverable in a bad faith action, including damages for emotional distress and punitive damages, are not assignable (*Murphy, supra,* 17 Cal.3d at p. 942), the cause of action itself remains freely assignable as to all other damages (*id.* at p. 946).

Here, the claim that Sanchez assigned to Five Star is based on Essex's tortious breach of its contract obligation under the policy to defend its insured, Sanchez, in the lawsuit brought against him by Five Star. In suing on this assigned claim, Five Star has not sought damages for emotional distress or punitive damages, or damages for injury to reputation or other personal interests. What Five Star has sought to recover as tort damages is the monetary value of the policy benefits wrongfully withheld by Essex.

As this court has explained, "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy," the fees incurred for those attorney services "are an economic loss—damages—proximately caused by the tort." (*Brandt, supra,* 37 Cal.3d at

p. 817.) Those attorney fees do not possess any of the personal aspects that preclude assignment of other tort damages, such as damages for emotional distress. They are not damages arising "from the personal tort aspect of the bad faith cause of action." (*Murphy, supra,* 17 Cal.3d at p. 942.)

We reject Essex's argument that because *Brandt* fees are tort damages, they are recoverable only if incurred by the insured personally, rather than by the assignee. "As a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies . . . ." (*Salaman v. Bolt* (1977) 74 Cal.App.3d 907, 919 [141 Cal.Rptr. 841].) Had Sanchez brought the bad faith action against Essex, his right to recover *Brandt* fees would be unquestioned. As the assignee of Sanchez's claim against Essex, Five Star stands in his shoes, and so may assert his right to recover any *Brandt* fees incurred in prosecuting the assigned claim. We agree with the Court of Appeal here that the right that Sanchez assigned to Five Star was the "right to recover the policy benefits in full, undiminished by the attorney fees incurred in bringing the action to recover those benefits." Were we to accept Essex's argument, Sanchez would no longer be assigning the right to recover the policy benefits *in full.*

Essex also argues that allowing Five Star, an assignee, to recover *Brandt* fees from it would not serve to make the insured whole, which is the essential purpose of *Brandt* fees, because, under the terms of the assignment from Sanchez to Five Star, the amount that Five Star recovers as *Brandt* fees will not reduce Sanchez's liability on the judgment in the underlying action. We disagree. In exchange for the assignment, Five Star agreed to defer collection of the judgment against Sanchez until "all efforts to collect the judgment against Essex . . . have been exhausted." (See fn. 2, *ante.*) Thus, all sums recovered from Essex, including *Brandt* fees, will be credited against the judgment in the underlying action, directly reducing Sanchez's liability to Five Star. 

Disallowing recovery of *Brandt* fees in cases such as this would result in a windfall for the insurer, whose liability for tortious conduct would be significantly reduced because of the fortuitous circumstance of the assignment of the bad faith claim. As we have recognized, recoverable *Brandt* fees may exceed the contract benefits wrongfully withheld. (*Cassim v. Allstate Ins. Co., supra,* 33 Cal.4th at p. 809.) Disallowing recovery of *Brandt* fees incurred by assignees would also tend to discourage assignment of bad faith claims against insurance companies, contrary to the public policy favoring transferability of causes of action.

## IV. Conclusion

We conclude that an insured's assignment of a cause of action against an insurance company for tortious breach of the covenant of good faith and fair dealing by wrongfully denying benefits due under an insurance policy carries with it the right to recover *Brandt* fees that the assignee incurs to recover the policy benefits in the lawsuit against the insurance company.[4]

The Court of Appeal's judgment is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

[4] *Xebec Development Partners, Ltd. v. National Union Fire Ins. Co., supra*, 12 Cal.App.4th 501, is disapproved insofar as it is inconsistent with this conclusion.