[No. A127784. First Dist., Div. Three. Apr. 28, 2011.]

LINDA RICHARDS et al., Plaintiffs and Appellants, v.
SEQUOIA INSURANCE COMPANY, Defendant and Respondent.

## Counsel

Richards & Richards and Thomas C. Richards for Plaintiffs and Appellants.

Archer Norris and W. Eric Blumhardt for Defendant and Respondent.

## Opinion

**SIGGINS, J.**—Appellants Linda and Thomas Richards sued Sequoia Insurance Company (Sequoia) for breach of contract and breach of the covenant of good faith and fair dealing, due to Sequoia's delay in providing a defense and coverage for a wrongful death action tendered by the Richardses. The trial court granted summary judgment for Sequoia on the basis that the Richardses sustained no damages as a result of Sequoia's alleged breach, and Sequoia acted reasonably when it referred the Richardses' claim to coverage counsel before agreeing to defend them. We conclude there are no triable issues of material fact, and therefore affirm on the basis that the Richardses sustained no actionable damage.

### FACTUAL AND PROCEDURAL BACKGROUND

The Richardses are owners of the Jack London Lodge, which was insured by Sequoia through a general liability policy that included liquor liability coverage. In December 2004, a 20-year-old patron was fatally injured in a single-car accident after leaving the Lodge's bar, and the special administrator of her estate filed a complaint against the Richardses and the Lodge alleging she was negligently served alcohol that contributed to her death (the Morris lawsuit). On February 29, 2006, the day after they were served with the complaint, the Richardses tendered defense of the Morris lawsuit to Sequoia.

Sequoia responded to the Richardses by letter dated March 8, 2006. The letter acknowledged receipt of the Morris complaint, and advised the Richardses that Sequoia was "referring this matter to coverage counsel for review and an opinion as to Sequoia's potential[] obligations. We do not expect to have that opinion before you must file a responsive pleading to the lawsuit. [¶] We recommend that you act immediately to protect your interests by retaining counsel of your choice and at your expense to respond to the allegations in the complaint. Counsel should continue to represent you until such time as Sequoia has determined the nature and extent of any potential obligation. If Sequoia has an obligation to assume the defense, we will reimburse your reasonable defense costs incurred from the date of tender of this suit . . . ." The letter concluded: "We expect to have an opinion within 45 days and will tell you as soon as it is received." According to Sequoia's vice-president for claims, Lola Hogan, such a letter was generally sent to any insured who tendered the defense of a lawsuit filed by a third party.

When they received Sequoia's March 8 letter directing them to arrange for their own defense to the Morris lawsuit, the Richardses had no funds available to hire an attorney. They contacted Brian Charter, who agreed to represent them without a retainer, with the understanding that the Richardses, who were licensed attorneys, "would do the majority of the legal research, pleadings, and investigation necessary in the case." In a March 13 letter to Sequoia, Thomas Richards demanded Sequoia immediately provide a full defense and indemnity under the policy. Around the same time, Linda Richards contacted Sequoia through her insurance agent to ask for a coverage opinion sooner than 45 days, and was told Sequoia might have it ready in 30 days.

The next the Richardses heard from Sequoia was by a letter dated March 17 (received by the Richardses on Mar. 21 or 22). Sequoia accepted the Richards's tender of defense, subject to a reservation of rights. Sequoia later settled the Morris lawsuit at its expense, paid all attorney fees owed to Brian Charter and the fees owed to other attorneys who represented the Richardses after Sequoia assumed their defense.

After the Morris lawsuit was dismissed, the Richardses wrote to Sequoia offering to settle all their claims against the insurer for "denial of the defense and indemnity" of the Morris lawsuit. They offered to compromise their claims for $30,000. The bulk of the Richardses' damages claim was based upon time "spent every day for a week and a half after receiving [Sequoia's March 8] letter researching and evaluating [the Morris lawsuit]." They each spent 60 hours working on the case and sought $250 per hour for their time, resulting in the $30,000 demand. They also stated that if they could not reach a settlement, they would file suit for emotional distress and punitive damages. Sequoia requested and received a detailed billing from the Richardses, which

showed approximately $43,000 in fees, but the insurer did not otherwise respond to the Richards's settlement offer.

The Richardses sued Sequoia for breach of contract and breach of the covenant of good faith and fair dealing. The complaint alleged Sequoia's March 8 letter wrongly denied the Richardses a defense of the Morris lawsuit, and as a result, the Richardses incurred reasonable defense expenses. The complaint also alleged Sequoia's denial was without proper cause, "with the intention of coercing [the Richardses] to forgo the benefits of the policy," and that the Richardses suffered emotional distress as a result. The complaint requested punitive damages on the grounds that Sequoia "acted with oppression, fraud, and malice."

Sequoia moved for summary judgment, contending it did not breach the contract or the covenant of good faith and fair dealing because it timely agreed to defend the Morris lawsuit, paid the fees owed to attorneys who represented the Richardses and paid the costs of settlement. The Richardses opposed the motion, contending there were disputed issues of material fact regarding both causes of action. The court granted summary judgment for Sequoia on the basis that the Richardses were not entitled to recover for the time they expended in their own defense, and that Sequoia expeditiously accepted defense and coverage of the Morris lawsuit. The Richardses timely appealed from the judgment.

## DISCUSSION

### A. *Standard of Review*

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more of its elements cannot be established or it is subject to an affirmative defense. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar, supra*, at p. 850.) If the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to show the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra*, at p. 849.)

"Summary judgment is a drastic remedy to be used sparingly, and any doubts about the propriety of summary judgment must be resolved in favor of the opposing party." (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 17 [9 Cal.Rptr.3d 486].) Thus, we view the evidence in the light most favorable to the Richardses and construe their

submissions liberally while we strictly scrutinize Sequoia's showing. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768–769 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) "The court focuses on issue finding; it does not resolve issues of fact." (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1071 [56 Cal.Rptr.3d 312].)

### B. *Breach of Contract Claim*

The Richardses' breach of contract claim is predicated on Sequoia's "denial" of defense and coverage of the Morris lawsuit. While the trial court, in part, granted summary judgment on the basis that Sequoia did not act unreasonably to deny coverage in the nine days that elapsed between its letter of March 8 and its letter of March 17 (that was received by the Richardses on Mar. 22), we need not consider the consequences of Sequoia's hesitation in accepting the Richardses' tender in order to decide this appeal. Instead, the trial court's judgment is supportable on the basis that the Richardses sustained no legally cognizable damages for any alleged breach of the insurance contract or the covenant of good faith and fair dealing.

The general measure of contract damages owed an insured due to an insurer's breach of the duty to defend are the "costs and attorney fees expended by the insured defending the underlying action." (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1088–1089 [31 Cal.Rptr.3d 43].) When the policy provides coverage for the claim, an insured may also recover the amount of any reasonable, good faith settlement. (*Ibid.*)

The parties agree that Sequoia paid all the fees owed to the law firms that defended the Richardses. They also agree that Sequoia paid to settle the Morris lawsuit. The disagreement arises over whether Sequoia is also obligated to pay the Richardses for the time they expended as attorneys working on the case on their own behalf.

Sequoia relies on *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] to argue that attorneys, such as the Richardses, who bring an action in propria persona for breach of a contract containing a prevailing party attorney fees provision, cannot recover for the value of their services expended to successfully prosecute the action. *Trope* aids our analysis, but is not dispositive. *Trope* turns on a construction of Civil Code section 1717, and concludes that attorneys who represent themselves in disputes involving contracts containing attorney fees provisions do not "become liable to pay consideration in exchange for legal representation [and] cannot recover 'reasonable attorney's fees' under section 1717 as compensation for the time and effort [they expend] on [their] own behalf or for [lost] professional business opportunities." (*Trope v. Katz, supra*, at p. 292.)

The *Trope* court's conclusion was based upon its determination that Civil Code section 1717 permits the award of "reasonable attorney's fees" where the fees are " '*incurred* to enforce that contract.' " (*Trope v. Katz, supra,* 11 Cal.4th at p. 280.) Here, we deal with a contract of insurance rather than a prevailing party attorney fees provision of the type commonly found in a commercial contract. But the *Trope* court's construction of "reasonable attorney's fees" and "incurred" are nevertheless instructive.

The applicable coverage afforded by the Sequoia policy is for liquor liability. For any suit it defended under the policy, Sequoia agreed to pay "All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit,' including actual loss of earnings up to $100 a day because of time off from work." Sequoia's obligation to pay was also subject to a general condition of the policy that: "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." Notwithstanding these policy provisions, the Richardses argue Sequoia must compensate them for their time because it declined coverage, authorized them to retain an attorney of their choosing and they chose, in part, to represent themselves.

■ However, the measure of damages for any breach of Sequoia's contractual duty to defend are the "costs and attorneys fees expended by the insured in defending the underlying action." (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp., supra,* 130 Cal.App.4th at pp. 1088–1089.) There is no reason in these circumstances to depart from Trope's thorough analysis, albeit in other contexts, that compensation for the Richardses' self-representation is not the payment of "attorney's fees expended by the insured." (See *Trope v. Katz, supra,* 11 Cal.4th at p. 280.) Moreover, "[c]ontract damages serve to put the party in as good a position as it would have been had performance been rendered as promised." (*State of California v. Pacific Indemnity Co.* (1998) 63 Cal.App.4th 1535, 1551 [75 Cal.Rptr.2d 69].) The insurance contract obligates Sequoia to compensate the Richardses for "expenses incurred" at Sequoia's request, but not those voluntarily assumed by them. So did Sequoia's March 8th letter. It authorized the Richardses to retain counsel of their choice and at their expense subject to Sequoia's possible reimbursement of the "reasonable defense costs incurred." ■ Again, as stated in *Trope,* the commonly accepted usage of "incur" means "to become obligated to *pay* [a fee]. It follows that an attorney litigating in propria persona cannot be said to 'incur' compensation for his time and his lost business opportunities." (*Trope v. Katz, supra,* at p. 280.)

There is nothing in this record to suggest that Sequoia consented to compensate the Richardses for their efforts in propria persona, or that the

Richards could have had any reasonable expectation of compensation in light of the language of the Sequoia policy. (See *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276 [54 Cal.Rptr. 104, 419 P.2d 168] [scope of coverage is determined by the reasonable expectation of the insured].) The measure of attorney fees possibly owed by Sequoia for its delay in accepting the Richardses' tender of defense were those "expended" by the Richardses, not those based upon the value of their time or services. They have no such claim for fees. A plaintiff who cannot show payment of legal expenses in defense of a claim does not show contract damages due to an insurer's delay in assuming responsibility. (See *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp., supra,* 130 Cal.App.4th at p. 1089.)

### C. Breach of the Covenant of Good Faith and Fair Dealing Claim

■ "In addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing." (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp., supra,* 130 Cal.App.4th at p. 1093.) "Since a tort action for breach of the covenant of good faith and fair dealing 'is one seeking recovery of a *property* right, not personal injury,' to prevail the insured must show proof of economic loss." (*Id.* at p. 1094.)

Typically, such economic loss includes the attorney fees incurred by the insured in attempting to secure the benefits due the insured under the policy. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796].) The Richardses make no claim for fees incurred to secure the benefits afforded by Sequoia's policy. Rather, they seek compensation for their time, unspecified "litigation costs, mitigation costs and emotional distress damages" and punitive damages. Although the Richardses claim litigation and mitigation costs, there is no evidence of such economic loss in this record. As we have explained above, the claim for their time is also not one seeking compensation for economic loss. "In the absence of any economic loss there is no invasion of plaintiffs' *property rights* to which their alleged emotional distress over [Sequoia's] denial and delay could be incidentally attached. In short, there would be no legal basis for an action for bad faith." (*Continental Ins. Co. v. Superior Court* (1995) 37 Cal.App.4th 69, 86 [43 Cal.Rptr.2d 374].) Summary judgment was proper on the claim for Sequoia's alleged breach of the covenant of good faith and fair dealing.

## DISPOSITION

The summary judgment is affirmed.

McGuiness, P. J., and Jenkins, J., concurred.