Filed 5/1/26  Bornoff v. State Farm General Ins. Co. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JENNIFER BORNOFF, | B339796 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV23104) |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Reversed and remanded with directions.

Todd Krauss, Todd Krauss; Law Offices of Kevin M. Zietz, Kevin M. Zietz; Benedon & Serlin, Judith E. Posner, Wendy S. Albers and Drew Musto for Plaintiff and Appellant.

Tharpe & Howell and Eric B. Kunkel for Defendant and Respondent.

_____

Plaintiff Jennifer Bornoff appeals from a judgment in favor of her business insurer, Defendant State Farm General Insurance Company (State Farm), entered after the trial court granted State Farm's motion for summary judgment on Bornoff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court also denied Bornoff's postjudgment motion for a new trial on her bad faith claim. Bornoff concedes that State Farm was entitled to summary adjudication of her contract claim but challenges the summary adjudication of her bad faith claim and the denial of her new trial motion.

We conclude that in moving for summary judgment, State Farm failed to meet its initial burden of production under Code of Civil Procedure section 437c to show that no triable issue existed as to Bornoff's claim that State Farm's delay in paying her policy benefits caused her extracontractual economic losses.[1] Because the burden never shifted to Bornoff to produce evidence that she suffered such an economic loss, we conclude that the trial court erred by summarily adjudicating Bornoff's bad faith claim on the ground that she failed to produce such evidence. As to whether State Farm unreasonably delayed payment (which issue the trial court did not reach), we conclude that the evidence in the summary judgment record reveals a triable issue of material fact. Because we conclude that summary judgment should not have been granted, we need not address the additional evidence that

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

Bornoff submitted with her new trial motion, or her argument that the trial court erred by denying that motion.

Accordingly, we reverse the judgment and remand to the trial court with directions to enter a new order granting summary adjudication of Bornoff's breach of contract claim and otherwise denying State Farm's motion for summary judgment or summary adjudication.

## BACKGROUND

The facts summarized below are taken from undisputed facts in the parties' separate statements and from uncontradicted evidence in the summary judgment record.

A. **On March 6, 2022, Bornoff's business suffered a burglary and she submitted a claim to State Farm. She promptly provided requested information to the assigned claims associate, Dan Walder, who did not request additional information.**

Bornoff operates a retail business in Studio City. She purchased from State Farm a business insurance policy effective from March 1, 2022, to March 1, 2023.

On March 6, 2022, burglars entered Bornoff's store by creating a hole in a wall shared with an adjoining business, damaged several items of property in the store, and stole a substantial amount of merchandise. The same day, Bornoff submitted a claim with State Farm for loss of business personal property and loss of income.

Bornoff's insurance policy provided: "You must see that the following are done in the event of loss to covered property: [¶] . . . [¶] b. Give us prompt notice of the loss. Include a description of the lost or damaged property in the notice; [¶] c. As soon as

3

possible, give us a description of how, when and where the loss occurred; [¶] . . . [¶] e. *At our request*, give us complete inventories of the damaged and undamaged property. . . . [¶] . . . [¶] h. Send us a signed, sworn statement of loss containing the information we request to settle the claim.  You must do this within 60 days *after our request*.”  (Italics added.)  “We will pay for covered loss within 30 days after we receive the sworn statement of loss, if: [¶] (1) You have complied with all of the terms of this policy; and [¶] (2) We have reached agreement with you on the amount of loss or an appraisal award has been made.”

Dan Walder, the claims associate assigned to Bornoff’s claim, testified that he never requested a sworn statement of loss from Bornoff because he “wasn’t questioning the loss.”  Indeed, whether State Farm would pay for Bornoff’s claimed losses (after ascertaining their value) “was never even in question.”

On March 7, State Farm notified Bornoff that Walder would review her claim and contact her if State Farm needed additional information.  The same day, Walder emailed Bornoff a letter identifying the information State Farm would need to process her claim: a police report, her lease agreement, an invoice for repair to the damaged wall, loss documentation for the stolen and damaged property, and a “[l]oss of income review.”  Walder also emailed Bornoff a link to an online “contents collaboration form” that she could use to submit the required inventory of her stolen and damaged property.  Bornoff spoke with Walder on the phone later that day and told him that she did not own a computer, was not “computer savvy,” and “would not be able to itemize all the items lost on the [contents collaboration] form provided.”  Walder “told [her] to write everything down and send it to him and that he would have his team fill out the form.”

4

Two days later (on March 9), in a series of emails to State Farm, Bornoff submitted photos and videos of the damaged property, a police report, and a letter from her landlord confirming her responsibility for repairing the wall damage.[2] Bornoff requested—but never received—confirmation of receipt of the police report and letter from her landlord.

Another two days later (on March 11), Bornoff emailed State Farm an invoice for initial repairs and an inventory of stolen merchandise from one of her vendors. Bornoff wrote: "I just learned how to use the scan app so please confirm that this worked!" She received no response from Walder or anyone else at State Farm.

Walder testified that after receiving the information from Bornoff on March 11, he still needed Bornoff to provide a "full" list of stolen items and their replacement costs. He did not inform Bornoff of what information he still needed.

**B.** **On March 31, 2022, Bornoff's business suffered a second burglary and she submitted a second claim. On April 7, having received no contact from Walder for a month, she hired an attorney, Todd Krauss.**

On March 31, 2022, Bornoff's store was again burglarized, and Bornoff submitted a second claim with State Farm for loss of business personal property and loss of income. The same day, State Farm notified Bornoff that a different claims associate, Bo Bailey, would review her second claim and contact her if State Farm needed additional information. The next day (April 1), State Farm internally reassigned Bornoff's second claim from

---

[2] Walder accepted the letter from Bornoff's landlord in lieu of the lease agreement he had requested.

Bailey to Walder (who remained assigned to her first claim as well).

By April 7 (one month after Walder last contacted Bornoff to request information for her first claim), Bornoff had not received any correspondence from Walder or State Farm regarding additional information she needed to submit for either of her two claims. Bornoff felt that State Farm's lack of response to her repeated inquiries was "disturbing," and she did not know what to do. Accordingly, she hired an attorney, Todd Krauss.

**C.    On April 11, 2022, State Farm received a letter from Krauss with itemized lists of lost items, separated by each burglary. Walder did not contact Krauss until May 26, when he asked him to (again) submit such an inventory. Krauss did so on June 6.**

On April 7, 2022, Krauss sent Walder a letter by certified mail to the same address given on Walder's March 7 letter to Bornoff. Krauss also faxed the letter to State Farm's centralized location for receiving faxes. Krauss informed State Farm that Bornoff had retained his office to represent her in pursuing both of her claims, and attached various information to support the claims, including itemized lists of lost and damaged property. The attachments contained information about "approximately 972 stolen items[,] of which approximately 450 were unique items, many of which were consignment inventory items." Krauss separated the attachment into two sections—the first labeled "March 6, 2022 first break-in" and the second labeled "March 31, 2022 second break-in." Krauss emphasized Bornoff's desire to "get the store repaired and reopened as quickly as possible to avoid any more losses," and requested that Walder contact him after reviewing the information provided.

6

Walder testified that when an insured like Bornoff suffers an interruption to the insured's business, time is of the essence. Walder's supervisor, Todd Noakes, similarly testified that such an interruption renders prompt claims handling especially important, and that delayed investigation or payment could cause the insured financial hardship.

State Farm received Krauss's letter on April 11, 2022. However, Walder testified that he did not recall having seen the letter. He acknowledged that reviewing the letter would have clarified which lost items corresponded to which of Bornoff's two claims.

Before April 28, Krauss phoned Walder and left messages at least two times, but received no response. On that date, he mailed and faxed a follow-up letter to Walder, which again requested that Walder contact him.

State Farm received the follow-up letter on May 3. However, Walder testified that he did not recall having seen that letter. He acknowledged that he did not contact Bornoff between her submission of information on March 11 and State Farm's receipt of Krauss's follow-up letter on May 3. He testified that "a letter should have been sent" during that time period to advise her of her claims' status.

On May 13, Noakes directed Walder to inform Krauss that State Farm lacked information regarding whether Bornoff's losses exceeded her $5,000 deductible (which information Krauss had provided in his April 7 letter), and to request additional information.

Two weeks later (on May 26), Walder emailed Krauss a link to a contents collaboration form and asked him to have Bornoff provide a list of costs for the lost items of property. Krauss

7

responded: "We already sent a list of items and numbers. I am going to have her do this again but that will be it. [¶] It is not fair to her and this should have been sent to me a month ago."

On May 31, Krauss sent Walder the contents collaboration form with the requested inventory of lost items. On June 3, Krauss phoned Walder, who requested that Krauss specify which items corresponded to which of the two burglaries. On June 6, Krauss resubmitted the inventory, this time with handwritten notations indicating which burglary each item had been lost in.

**D.     On July 15, 2022, Bornoff sued State Farm for breach of contract and bad faith. Within days, State Farm paid her all the policy benefits due for lost property.**

On June 8, 2022, Walder assigned Bornoff's second claim to the Centralized Contents Team (CCT) to begin valuing Bornoff's lost property. On June 27, he assigned her first claim to the CCT as well.[3]

On July 7 (one month after Krauss resubmitted the inventory to Walder as requested), CCT member Shamontae Byrd phoned Bornoff, who advised her to phone Krauss. Byrd then told Krauss by phone that she was just starting to process the information for the claims. Later that day, Krauss sent Walder a letter informing him that Bornoff would sue State Farm if State Farm did not provide a response regarding the status of her claims by July 12.

---

[3] On June 15, 2022 (between the two dates when Walder assigned the claims to the CCT), Kraus sent Walder a letter demanding information about the status of Bornoff's claims and stating that she would sue State Farm if it was not provided. Walder did not respond.

On July 15, having received no response, Bornoff filed a complaint against State Farm for breach of contract and breach of the implied covenant of good faith and fair dealing. On July 20 (about four months after Bornoff submitted her claims), State Farm paid Bornoff the full amount of policy benefits due for lost property ($55,166.37 on her first claim and $75,493.53 on her second).

Noakes testified that the four-month period to pay Bornoff's lost property benefits "seems like it's too long," although he was not personally involved in handling her claims and did not know the reason for the delay. Walder testified that State Farm's adjustment and payment of Bornoff's claims was "slow," but he did not believe that it was unreasonable because (as he recalled) State Farm did not receive the information he asked for until early June 2022. Walder testified: "[I]t took us a while to identify what items go to what claim. And that was -- that was the essential slowdown, I think."

**E.     Bornoff filed an amended complaint, which alleged that State Farm's unreasonable delay in payment caused her extracontractual economic damages, including attorney fees. The trial court granted State Farm's motion for summary judgment and denied Bornoff's motion for a new trial.**

In August 2022, Bornoff filed her operative, first amended complaint for breach of contract and breach of the implied covenant of good faith and fair dealing. Bornoff alleged that State Farm acted in bad faith by "[u]reasonably delaying the payment of her benefits under the policy when liability and responsibility was reasonably clear." She alleged that State Farm's unreasonable conduct caused her "damages under the

9

Policy, plus . . . other economic and consequential damages" and emotional distress. "As a further proximate result of the unreasonable and bad faith conduct of Defendants, Plaintiff was compelled to retain legal counsel to obtain the benefits due under the Policy. Therefore, Defendants are liable to Plaintiff for those attorney fees . . . and cost[s] of litigation reasonably necessary and incurred by Plaintiff in order to obtain the benefits . . . ." The complaint's prayer for relief specified that Bornoff sought to recover such attorney fees and costs "[p]ursuant to *Brandt v. Superior Court* [(1985) 37 Cal.3d 813]."[4] The complaint also prayed for economic and consequential damages, emotional distress damages, and punitive damages.

After Bornoff filed her amended complaint, State Farm paid Bornoff all remaining policy benefits due for covered losses other than lost property, including lost income. We need not further discuss those payments, because Bornoff bases her bad faith claim solely on State Farm's handling of her claims for lost property.

In written discovery responses (which State Farm produced with its subsequent motion for summary judgment), Bornoff reiterated that she was seeking attorney fees and other economic damages allegedly caused by State Farm's unreasonable delay in

---

[4] In *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*), the Supreme Court held: "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an *economic loss*—damages—proximately caused by the tort." (*Id.* at p. 817, italics added.) Such fees are "commonly referred to as *Brandt* fees." (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1255.)

10

payment.  She further alleged that the delay "resulted in her losing exclusive vendors she worked with," which caused her to lose income.

State Farm moved for summary judgment or, in the alternative, summary adjudication of Bornoff's claims for breach of contract, bad faith, and punitive damages.  As to the bad faith claim, it moved for summary adjudication on the following grounds:  "Plaintiff's second cause of action for breach of the covenant of good faith and fair dealing is without merit as a matter of law because the undisputed evidence proves that State Farm paid all benefits due to Plaintiff *under her policy*, which Plaintiff has admitted[,] and that State Farm's adjustment of her claims was reasonable."  (Italics added.)  Neither State Farm's memorandum of points and authorities nor its separate statement addressed Bornoff's claims for *extracontractual* economic damages.

Bornoff conceded that summary adjudication was appropriate as to her breach of contract claim, but opposed summary adjudication of her claims for bad faith and punitive damages.  She argued that State Farm failed to meet its burden to show that there were no triable issues of material fact as to the bad faith claim because, among other reasons, State Farm's payment of the policy benefits did not resolve whether, as she alleged, its delay in making that payment caused Bornoff other actionable detriment.

Consistent with her discovery responses, Bornoff declared that she "lost some of [her] exclusive merchants for jewelry" because she could not pay them until she received State Farm's delayed payments.  She further declared that the delay caused her "financial hardship," explaining:  "I went through my

11

personal savings; I used my mother's credit cards to help purchase inventory and groceries; I borrowed money from a family member; I used money from a Go-Fund Me campaign to keep my business open and pay my bills." Finally, she declared that the delay caused her "great emotional distress," which resulted in insomnia, weight gain, and hair loss. Bornoff also produced an expert declaration from Robert Worth, an attorney and former insurance claims representative, who opined that State Farm's delay in paying the policy benefits was unreasonable, in part because Walder violated an insurance regulation requiring timely notice to an insured regarding the status of the insured's claim and any additional information needed to make a determination.

The trial court heard and granted State Farm's motion for summary judgment. In summarily adjudicating the bad faith claim, the trial court concluded: "The Defendant paid all benefits owed under the policy, the Plaintiff never disputed the amount of benefits, and the Plaintiff admitted that she was paid all benefits owed. Accordingly, the Defendant has met its initial burden of showing that the Plaintiff did not suffer any detriment due its claims handling." "[T]he Plaintiff provides no evidence that she suffered additional detriment due to this delayed handling. The Plaintiff declares that she experienced financial hardship because she went through her personal savings, used credit cards to purchase inventory and groceries, borrowed money, and used a Go Fund Me campaign to keep her business open and pay bills. . . . These economic harms were remedied when the Defendant paid all benefits owed . . . ." "Because she suffered no economic loss as a result of the delay, the Plaintiff cannot recover

12

damages for emotional distress. [¶] Summary Adjudication of the second cause of action is Granted."

After the trial court entered judgment in State Farm's favor, Bornoff moved for a new trial on her bad faith claim. The trial court heard and denied the motion. Bornoff filed a timely notice of appeal.

## DISCUSSION

### A. Summary judgment burdens and standard of review

"A party may move for summary judgment . . . if it is contended that the action has no merit . . . ." (§ 437c, subd. (a)(1).) Similarly, "[a] party may move for summary adjudication as to one or more causes of action within an action . . . if the party contends that the cause of action has no merit . . . ." (§ 437c, subd. (f)(1); see also § 437c, subd. (f)(2) ["A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment"].) "A defendant . . . has met that party's burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).)

Thus, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact . . . ." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action.

13

The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that [the plaintiff] has discovered nothing." (*Id.* at p. 855.) "Summary judgment law in this state, however, continues to require a defendant moving for summary judgment to *present evidence*, and not simply *point out* that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at p. 854, italics added and fn. omitted; see also § 437c, subd. (b)(1) ["The motion shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken"].)

"We review summary judgment appeals by applying the same three-step analysis applied by the trial court: First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, if the movant has met its burden, we consider whether the opposition raised triable issues of fact. We review these matters de novo." (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939-940, italics omitted (*Hawkins*); accord, *Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642 (*Ryan*).)

## B.     Bad faith and the requirement for economic loss

" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 (*Foley*).) " '[W]hen benefits are due an insured, "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable[,]

14

and numerous other tactics may breach the implied covenant because" they frustrate the insured's right to receive the benefits of the contract in "prompt compensation for losses." ' " (*Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1236 (*Brehm*).)

"Unlike with any other contract (see *Foley*[, *supra,* 47 Cal.3d at p. 684]), the breach of an *insurance* contract (by the insurer) of the implied covenant of good faith and fair dealing will give rise to an action in tort by the insured, as well as one in contract, at the election of the insured (or assignee). An action for recovery on either theory is what is commonly referred to as one for 'bad faith.' There is a significant difference, however, in the available remedies. If the insured elects to proceed in tort, recovery is possible for not only all unpaid policy benefits and other contract damages, but also extra-contractual damages such as those for emotional distress, punitive damages and attorney fees. . . . If the insured (or assignee) elects to proceed only in contract, . . . then recovery is limited to those damages recoverable in contract." (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467, fn. 19 (*Archdale*); accord, *Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 730, fn. 1.)

Thus, " '[i]n addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in . . . either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing.' " (*Richards v. Sequoia Ins. Co.* (2011) 195 Cal.App.4th 431, 438 (*Richards*).) However, " '[s]ince a tort action for breach of the covenant of good faith and fair dealing "is one seeking recovery of a *property* right, not personal

injury," to prevail the insured must show proof of economic loss.' " (*Ibid.*) "[W]hile unreasonable delay in paying benefits is actionable as bad faith, 'a delay in paying policy benefits, even if in an unreasonable manner, does not in itself establish economic loss to the plaintiff' . . . ." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1214 (*Major*).)

"On the other hand, the requirement of economic loss . . . may be satisfied where the insured has paid legal fees and court costs to enforce his or her claim under the policy." (*Major, supra,* 169 Cal.App.4th at p. 1214; accord, *Richards, supra,* 195 Cal.App.4th at p. 438.) "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort." (*Brandt, supra,* 37 Cal.3d at p. 817.) If an insurer's unreasonable delay in paying policy benefits has caused the insured to suffer economic loss (such as *Brandt* fees), the insured may recover extracontractual damages, including damages for emotional distress. (*Major,* at pp. 1214-1215.)

**C.    State Farm is not entitled to summary adjudication of Bornoff's bad faith claim on the ground that she suffered no economic loss, because State Farm failed to meet its initial burden of production.**

For the reasons explained below, we conclude that State Farm failed to meet its initial burden of production to show that no triable issue existed as to the complaint's claim that State Farm's unreasonable delay in paying Bornoff's policy benefits caused her extracontractual economic losses. Because the burden never shifted to Bornoff to produce evidence that she suffered

16

such an economic loss, we conclude that State Farm is not entitled to summary adjudication of her bad faith claim on the ground that she failed to produce such evidence.

First, we conclude that State Farm's undisputed evidence that it paid Bornoff all benefits due under the parties' *contract* did not satisfy its initial burden of production to show that no triable issue existed as to actionable economic loss. As discussed, where, as here, a plaintiff elects to pursue a tort theory of bad faith, actionable economic loss is not limited to policy benefits, but also includes *extracontractual* economic losses. (*Archdale*, *supra*, 154 Cal.App.4th at p. 467, fn. 19; see also Croskey et al, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2025) ¶ 13:70, p. 16 ["Extracontractual compensatory damages recoverable in insurance 'bad faith' actions typically include: [¶] economic losses" (italics omitted)].) Thus, "[a]n insurer that pays the full amount of its policy may be liable for breach of the implied covenant of good faith and fair dealing if improper claims handling causes detriment to the insured." (*Hedayati v. Interinsurance Exchange of the Automobile Club* (2021) 67 Cal.App.5th 833, 844 (*Hedayati*); accord, *Schwartz v. State Farm Fire and Cas. Co.* (2001) 88 Cal.App.4th 1329, 1339.)

Here, Bornoff's operative complaint alleged that State Farm's unreasonable delay in paying the policy benefits caused her extracontractual economic losses, including *Brandt* fees. Indeed, the complaint expressly sought to recover attorney fees "[p]ursuant to" *Brandt*. As noted, such fees "are an *economic loss*—damages—proximately caused by the tort." (*Brandt, supra*, 37 Cal.3d at p. 817, italics added.) Thus, the complaint tendered the issue of whether Bornoff suffered economic loss in the form of *Brandt* fees. Nevertheless, State Farm produced no evidence

17

that its allegedly unreasonable delay in paying the policy benefits did not cause Bornoff to incur *Brandt* fees, or that she lacked and could not reasonably obtain evidence that its delay caused her to incur such fees.

Further, State Farm itself produced Bornoff's discovery responses, which specified another extracontractual economic loss allegedly caused by State Farm's delay in paying the policy benefits, i.e., Bornoff's loss of exclusive vendors and a resulting loss of income. State Farm produced no evidence that its allegedly unreasonable delay did not cause Bornoff to lose exclusive vendors and associated income, or that she lacked and could not reasonably obtain evidence that the delay caused her such an economic loss.

State Farm argues that we must disregard the complaint's claim for *Brandt* fees because Bornoff did not direct the trial court's attention to that claim in her opposition to the summary judgment motion. Relatedly, State Farm argues that Bornoff's claim for lost income from exclusive vendors is immaterial because she identified no evidence identifying the amount of income she lost. We disagree.

In reviewing a motion for summary judgment or summary adjudication, we and the trial court apply the same three-step analysis, which starts by consulting the pleadings—not the nonmoving party's opposition—to identify the issues that the motion must address. (*Hawkins*, *supra*, 144 Cal.App.4th at pp. 939-940; *Ryan*, *supra*, 32 Cal.App.5th at p. 642.) " ' " ' " '[A] motion for summary judgment must be directed to the *issues raised by the pleadings*.' " ' " ' " (*Hedayati*, *supra*, 67 Cal.App.5th at p. 845, original italics.) "If the defendant does not address an issue in a motion for summary judgment that has been raised in

the plaintiff's complaint, it fails to meet its initial burden to show the plaintiff's action has no merit; the motion therefore fails to shift the burden to the plaintiff to oppose summary judgment." (*Id.* at p. 846, citing *Hawkins*, at pp. 940, 945; accord, *Union Pacific Railroad Co. v. Ameron Pole Products LLC* (2019) 43 Cal.App.5th 974, 983.)

As explained, Bornoff's operative complaint raised the issue of whether State Farm's allegedly unreasonable delay caused her extracontractual economic losses, including *Brandt* fees. State Farm did not address that issue in its memorandum of points and authorities or its separate statement, much less produce evidence that no triable issue existed as to whether Bornoff incurred *Brandt* fees or otherwise suffered an extracontractual economic loss. On the contrary, State Farm itself produced Bornoff's discovery responses that alleged she suffered an additional economic loss in the form of lost income from lost exclusive vendors. Because State Farm therefore failed to meet its initial burden of production, the burden never shifted to Bornoff to oppose the motion. (*Hedayati*, *supra*, 67 Cal.App.5th at p. 846; see also *Hawkins*, *supra*, 144 Cal.App.4th at p. 940 [" 'Where the evidence presented by defendant does not support judgment in [defendant's] favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff' "]; *Mosley v. Pacific Specialty Ins. Co.* (2020) 49 Cal.App.5th 417, 434-435 [" 'The court's assessment of whether the moving party has carried its burden—and therefore caused a shift—occurs *before* the court's evaluation of the opposing party's papers. [Citations.] Therefore, the burden on the motion does not initially shift as a result of what is, or is not, contained in the opposing papers' "].)

19

In sum, we conclude that State Farm failed to meet its initial burden of production to show that no triable issue existed as to Bornoff's claim that State Farm's unreasonable delay in paying the policy benefits caused her extracontractual economic losses. Accordingly, the trial court erred by summarily adjudicating Bornoff's bad faith claim on the ground that she failed to produce evidence of such an economic loss. We need not address Bornoff's argument that the grant of summary adjudication on that ground violated her right to due process. (See, e.g., *County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 955 [" ' "we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us" ' " (quoting *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230)].)

**D.     State Farm is not entitled to summary adjudication on the ground that its delay in paying the policy benefits was reasonable as a matter of law, because the evidence reveals a triable issue regarding whether the delay was unreasonable.**

"We may affirm summary adjudication on any correct legal theory, as long as the parties had an adequate opportunity to address that theory in the trial court." (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 38.) State Farm urges us to affirm the summary adjudication of Bornoff's bad faith claim on a ground that the trial court did not reach but both parties had addressed, i.e., that State Farm's delay in

20

paying Bornoff's policy benefits was reasonable as a matter of law.[5]

Bornoff does not dispute that State Farm met its initial burden of production as to the issue of reasonableness. However, she argues that summary adjudication is unwarranted because she met her resulting burden to produce evidence creating a triable issue of fact regarding whether State Farm's delay was unreasonable. We agree.

To support a bad faith claim, an insurer's challenged conduct must be " ' "prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." ' " (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 726 (*Wilson*), quoting *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.* (2001) 90 Cal.App.4th 335, 346.) However, "there is no requirement to establish *subjective* bad faith" or " 'positive misconduct of a malicious or immoral nature . . . .' " (*Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1236 (*Bosetti*).)

"[T]he standard by which the claims handling activities of the insurer will be judged is clear. If an insurer is to avoid

---

[5] In its respondent's brief, State Farm argued that because the appellate record did not then contain the evidence that Bornoff submitted in opposition to summary judgment, Bornoff forfeited her appeal by failing to provide an adequate record for our review of the reasonableness of State Farm's conduct. Subsequently, we granted Bornoff's motion to augment the record with her opposition evidence. As augmented, the record is adequate for our review.

liability for bad faith, its actions and position with respect to the claim of an insured, and the delay or denial of policy benefits, must be 'founded on a basis that is *reasonable under all the circumstances.*' " (*Bosetti, supra*, 175 Cal.App.4th at p. 1237, italics added by *Bosetti*, quoting *Wilson, supra*, 42 Cal.4th at p. 724, fn. 7.)  Thus, "[a] delay in payment of benefits due under an insurance policy gives rise to tort liability only if the insured can establish the delay was unreasonable." (*Brehm, supra*, 166 Cal.App.4th at p. 1237, citing *Wilson, supra*, 42 Cal.4th at p. 723.)  " ' "[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, [but] becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." ' " (*Hedayati, supra*, 67 Cal.App.5th at p. 843, quoting *Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 689; accord, *Bartel v. Chicago Title Ins. Co.* (2025) 111 Cal.App.5th 655, 699.)

Here, Bornoff submitted her claims on March 6 and 31, 2022, and received payment of her policy benefits for lost property about four months later, on July 20.  Although it may not be inherently unreasonable for an insurer to take four months to pay policy benefits, we conclude that a reasonable jury could find that the four-month period constituted an unreasonable delay in the circumstances of this case.  Importantly, State Farm never questioned whether Bornoff's insurance policy covered her losses; the only question was the value of her benefits, not whether State Farm would pay them.  Further, State Farm was on notice that the burglaries caused an interruption to Bornoff's business, rendering prompt handling of her claims especially important.  Walder and Noakes, respectively, acknowledged that State Farm was "slow" in

22

handling the claims and seemed to take "too long" to issue payment.

Without citing the record, State Farm argues that its delay was reasonable as a matter of law because Bornoff's claims "required time and study to properly evaluate," especially because many of the lost items were unique and on consignment. However, State Farm produced no evidence that the nature of the claims or the lost items was the reason for its delay. Instead, Walder identified the reason for his admittedly "slow" handling of the claims as his confusion regarding which items had been lost in which of the two burglaries—confusion that he admitted would have been resolved if he had reviewed the letter and attachments that State Farm received from Krauss on April 11, 2022. Those attachments segregated the information about the lost items by each burglary. Nevertheless, after receiving the letter on April 11, it took State Farm more than three months to pay Bornoff the policy benefits on July 20 (days after Bornoff filed suit).

State Farm argues that Bornoff, not State Farm, caused the delay in processing her claims because "State Farm did not receive the information from Bornoff segregating the items by claim until June 6, 2022." As noted, however, State Farm received Krauss's information segregating the items by claim nearly two months before that date, on April 11. Even assuming, arguendo, that State Farm reasonably required Krauss to *resubmit* such information, the evidence supports a reasonable inference that he would have done so well in advance of June 6 if Walder had responded to Krauss's April 11 letter or to Krauss's follow-up letter and phone messages. Instead, Walder did not contact Krauss until May 26—13 days after his supervisor, Noakes, directed him to contact Krauss to ascertain whether

23

Bornoff's losses exceeded her $5,000 deductible (information which Walder should have known Krauss had already provided).

Relatedly, Walder admitted that he should have—but did not—send Bornoff a letter about the status of her claims between March 11, 2022 (when she submitted information in response to his initial request) and May 3, when State Farm received Krauss's follow-up letter. Bornoff's expert witness opined that by failing to do so, Walder violated an insurance regulation requiring an insurer to provide timely notice to an insured regarding any additional information needed to make a determination on the insured's claim.[6] (Cal. Code Regs., tit. 10, § 2695.7, subds. (b)-(c); see also *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1078 [trial court properly admitted expert's opinion that insurer violated insurance regulations as evidence of bad faith].)

On this record, a reasonable jury could find that Walder unreasonably delayed payment of the policy benefits by failing to

---

[6] "Upon receiving proof of claim, every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part." (Cal. Code Regs., tit. 10, § 2695.7, subd. (b).) "If more time is required than is allotted in subsection 2695.7(b) to determine whether a claim should be accepted and/or denied in whole or in part, every insurer shall provide the claimant, within the [40-day] time frame specified in subsection 2695.7(b), with written notice of the need for additional time. This written notice shall specify any additional information the insurer requires in order to make a determination and state any continuing reasons for the insurer's inability to make a determination. Thereafter, the written notice shall be provided every thirty (30) calendar days until a determination is made or notice of legal action is served." (*Id.*, § 2695.7, subd. (c)(1).)

communicate with Bornoff and her attorney regarding the information needed to value the lost items. (See *Fleming v. Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 37 ["There was evidence presented by plaintiff which could be reasonably interpreted as indicating that [defendant insurer] was not pursuing the adjustment of this claim with any degree of diligence. For example, requests by [defendant] for information from plaintiff's counsel seem to have been spaced out over a much longer period than was reasonable under the circumstances"].)

State Farm argues that the evidence does not raise a triable issue as to whether it "consciously" delayed payment. But State Farm produced no evidence explaining why neither Walder nor anyone else at State Farm responded to the letter (with attached proof of loss) that it undisputedly received from Krauss on April 11, 2022, or to Krauss's follow-up letter and phone messages. Although Walder testified that he did not recall having received those communications, that testimony would not preclude a reasonable jury from finding that Walder received and consciously ignored them. Thus, we conclude that the evidence would permit a reasonable jury to find that State Farm's delay in payment was " ' "prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." ' " (*Wilson*, *supra*, 42 Cal.4th at p. 726.)

We emphasize that " ' "the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact . . . ." ' " (*Hedayati*, *supra*, 67 Cal.App.5th at p. 843.) We conclude that

the evidence is not so one-sided as to compel a conclusion that State Farm's conduct was reasonable as a matter of law.

In sum, we conclude that State Farm is not entitled to summary adjudication of Bornoff's bad faith claim. Accordingly, we will reverse the trial court's summary adjudication of the bad faith claim and of Bornoff's claim for punitive damages as a remedy for bad faith.[7]

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to vacate its order granting State Farm's motion for summary judgment and to enter a new order denying State Farm's motion for summary judgment, granting State Farm's motion for summary adjudication of Bornoff's breach of contract claim, and otherwise denying State Farm's

---

[7] The trial court summarily adjudicated Bornoff's claim for punitive damages on the ground that Bornoff "cannot establish an underlying claim upon which punitive damages may be awarded," in light of its conclusion that State Farm was entitled to summary adjudication of her underlying claims for breach of contract *and* bad faith. We have disagreed with that conclusion as to the bad faith claim. State Farm does not argue that if we reverse the summary adjudication of the bad faith claim, we should nevertheless affirm the summary adjudication of the claim for punitive damages.

motion for summary adjudication.  Bornoff is entitled to recover her costs on appeal.

NOT TO BE PUBLISHED


                                        M. KIM, J.

We concur:



        BENDIX, Acting P. J.



        WEINGART, J.